UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MICHAEL L. AINSWORTH and
CHERYL AINSWORTH,

     Plaintiffs,

v.                                  CASE NO.: 8:10-cv-293-T-23TGW

CITY OF TAMPA and KENNY
NORRIS,

     Defendants.

_____/


**ORDER**

The plaintiffs sued in state court (Doc. 2) pursuant to 42 U.S.C. § 1983 and

alleged (1) a claim under the Fourth Amendment against the defendant, Tampa

police officer Kenny Norris ("Norris"); (2) a claim under the Fourth and Fourteenth

Amendments against the City of Tampa (the "City"); and (3) a "loss of consortium"

claim against both Norris and the City.  The defendants remove (Doc. 1), move

(Doc. 6) to dismiss, and argue (1) that qualified immunity protects Norris from the

plaintiffs' Fourth Amendment claim; (2) that the City is not vicariously liable for the

conduct of Norris, even if Norris violated a constitutional right; and (3) that loss of

consortium is "no more than a state law tort which does not rise to the constitutional

level."  In response, the plaintiffs argue (1) that Norris is not entitled to qualified

immunity and (2) that the plaintiffs state a claim against the City because the City

failed to properly train Norris, which failure resulted in the plaintiffs' injuries. (Doc. 11)

## Allegations of the Complaint

The plaintiffs, Michael L. Ainsworth ("Michael") and Cheryl Ainsworth ("Cheryl"), are married and live in Hillsborough County, Florida.  On May 20, 2007, Michael drove eastward on Busch Boulevard past Norris.  Norris initiated a "traffic stop," pursued Michael, and activated the flashing lights on Norris's patrol car. Michael pulled his vehicle into a parking lot on the corner of Busch Boulevard and 30th Street.  Norris followed Michael into the parking lot, exited the patrol car, and approached Michael's vehicle.  After obtaining Michael's license and registration, Norris returned to the patrol car.

After reviewing Michael's license and registration, Norris approached Michael's vehicle and ordered that Michael exit the vehicle.  Norris informed Michael that the Pinellas County Sheriff's Office had issued a warrant for Michael's arrest. (Doc. 5, ¶ 14)  Rather than exit the vehicle, Michael "explained that the warrant was for the arrest of a different Michael Ainsworth" and that the other Michael Ainsworth ("Michael R.") had a different middle name.  Michael informed Norris that, as a result of another, earlier incident (in which Michael was mistaken for Michael R.), the Pinellas County Sheriff's Office provided Michael with a letter stating officially that Michael was not the subject of the arrest warrant.  Norris ignored the explanation and demanded again that Michael exit the vehicle.  In response, Michael asked Norris to speak to Cheryl on Michael's cellular telephone.  Norris

spoke with Cheryl and demanded again that Michael exit the vehicle.  Rather than

exit the vehicle, Michael attempted unsuccessfully to call his attorney.  Next,

Michael again called Cheryl and requested that Cheryl "send someone to get their

daughter," who was in the passenger seat of Michael's vehicle.  Once more, Norris

spoke to Cheryl and "told her to get someone to the scene to assist her daughter

because her husband was going to jail."  (Doc. 5, ¶ 21)  Michael stated that he

would exit the vehicle but requested that Norris verify Michael's fingerprints.

Ignoring Michael's request, Norris "reached into the vehicle, grabbed [Michael], and

yanked him violently from the vehicle before slamming [Michael's] body violently to

the ground causing serious injuries."  (Doc. 5, ¶ 23)

## Discussion

### 1. Qualified Immunity

"Because qualified immunity is 'an entitlement not to stand trial or face the

other burdens of litigation,' questions of qualified immunity must be resolved 'at the

earliest possible stage in the litigation.'"  Gonzalez v. Reno, 325 F.3d 1228, 1233

(11th Cir. 2003) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) and Hunter

v. Bryant, 502 U.S. 224, 227 (1991) (per curium)).  "'[M]ore than mere conclusory

notice pleading is required. . . . [a] complaint will be dismissed as insufficient where

the allegations [in the complaint] are vague and conclusory.'"  Gonzalez, 325 F.3d at

1235 (quoting Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984)).

Accordingly, the plaintiff must allege with some specificity the facts supporting a

Section 1983 claim.  See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).

"Qualified immunity permits a government official to perform a discretionary duty 'without the fear of personal liability or harassing litigation' and protects from suit 'all but the plainly incompetent.'"  Greer v. Hillsborough County Sheriff's Office, 2006 WL 2535050, *1 (M.D. Fla. 2006) (citing Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003)).  A government official performs a "discretionary duty" if the official acts in furtherance of an official duty and the act falls within the scope of the official's authority.  Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998); see also Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 & n.6 (11th Cir. 2004) (stating that in order to receive the protection of qualified immunity, "the official must have been engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains.").  If a defendant demonstrates that the defendant acted within the defendant's "discretionary function," the burden shifts to the plaintiff to overcome qualified immunity.  See Rushing v. Parker, 2010 WL 918323 (11th Cir. 2010).

To defeat qualified immunity, the plaintiff's complaint (preliminarily accepted as true) must allege a constitutional violation "clearly established" by existing legal precedent.  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).  "For the law to be 'clearly established,' case law must have earlier developed in such a concrete and factually defined context to make it obvious to [a] reasonable government actor[] . . .

that what [the government actor] is doing violates federal law." Priester v. City of

Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

If, as in the present case, an excessive force claim arises from "an arrest or

investigatory stop of a free citizen," the claim "invoke[s] the protections of the Fourth

Amendment, which guarantees citizens the right 'to be secure in their persons . . .

against  unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S.

386, 394-95 (1989).  Nevertheless, the right to arrest a person includes "the right to

use some degree of physical coercion or threat thereof."  490 U.S. at 395-96;

Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).  "[A]ll claims that law

enforcement officers have used excessive force—deadly or not—in the course of an

arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

under the Fourth Amendment and its 'reasonableness' standard. . . ."  (emphasis in

original)  Accordingly,

> The "reasonableness" of a particular use of force must be judged from the
> perspective of a reasonable officer on the scene, rather than with the 20/20
> vision of hindsight.  The Fourth Amendment is not violated by an arrest
> based on probable cause, even though the wrong person is arrested, nor by
> the mistaken execution of a valid search warrant on the wrong premises.
> With respect to a claim of excessive force, the same standard of
> reasonableness at the moment applies: "Not every push or shove, even if it
> may later seem unnecessary in the peace of a judge's chambers," violates
> the Fourth Amendment. The calculus of reasonableness must embody
> allowance for the fact that police officers are often forced to make
> split-second judgments—in circumstances that are tense, uncertain, and
> rapidly evolving—about the amount of force that is necessary in a particular
> situation.

Graham, 490 U.S. at 396-97 (citations omitted).

"[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th Cir. 2000); Zivojinovich v. Barber, 525 F.3d 1059, 1072 (11th Cir. 2008) (finding that "[d]e minimis force will . . . support a Fourth Amendment excessive force claim [if] 'an arresting officer does not have the right to make an arrest.'"); Durruthy v. Pastor, 351 F.3d 1080, 1085, 1094 (11th Cir. 2003) (finding that even if the force applied in arresting the suspect—grabbing the suspect from behind, pushing him to the ground, and placing him in handcuffs—was unnecessary, the force was not unlawful.). For example, in Nolin, de minimis force consisted of the officer's (1) grabbing the suspect and shoving him "a few feet against a vehicle," (2) pushing the officer's knee into the suspect's back, (3) pushing the suspect's head into a van, (4) searching the suspect's groin area "in an uncomfortable manner," and (5) handcuffing the suspect. In Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997), de minimis force consisted of slamming the suspect against a wall and kicking the suspect's legs apart. See also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (finding that subduing the suspect with a "choke hold" and pushing the suspect against a wall was de minimus force); Vinyard v. Wilson, 311 F.3d 1340, 1348 n.13 (11th Cir. 2000); compare Lee v. Ferraro, 284 F.3d 1188, 1199 (2002) (finding a constitutional violation based on the officer's slamming the suspect's head into the trunk of the suspect's car after the officer had arrested, handcuffed, and secured the suspect.).[1]      In this

_____

[1] In arguing against dismissal, the plaintiffs cite Tennessee v. Garner, 471 U.S. 1, 8-10 (1985),
(continued...)

instance, the plaintiffs allege that Norris, acting "within the course and scope of his employment as a municipal police officer," used excessive force in arresting Michael.  (Doc. 5, ¶ 31)  Notwithstanding both Michael and Cheryl's assertions that the arrest warrant sought a different Michael Ainsworth, Norris forcibly removed Michael from the vehicle, slammed Michael's body to the ground, and allegedly caused Michael "serious injuries."  (Doc. 5, ¶ 23)  However, before applying force, Norris requested three times that Michael exit the vehicle.  Faced with (1) an non-compliant suspect, (2) an arrest warrant for a person with the same first and last name as Michael, and (3) the unusual and unverified assertions of both Michael and Cheryl, Norris forcibly secured Michael.  Under the circumstances, Norris's use of force falls in the realm of de minimis force as described and exemplified in Nolin, Jones, and Post.  Michael's conclusory  and vague assertion that he suffered "serious injuries" is insufficient to sustain a Section 1983 claim against Norris.  See GJR Investments, 132 F.3d at 1367.  Accordingly, the plaintiffs' allegations, even if accepted as true, fail to establish a constitutional violation.

---

[1](...continued)
and state that "[t]he Supreme Court has made clear that the use of any significant degree of excessive force in effecting even a 'constitutionally valid' arrest . . . may constitute an unreasonable seizure of the person in violation of the Fourth Amendment . . . ."  (Doc. 11)  Additionally, the plaintiffs state, without supporting authority, that "individuals have a clearly established constitutional right not to be arrested pursuant to a warrant issued for another individual."  (Doc. 11)  The plaintiffs, however, both misapply Garner and fail to grasp the import of Graham.  Garner establishes a boundary for the use of deadly force in effecting an arrest and not broadly "any significant degree of excessive force."  (Doc. 11)  Garner finds that, notwithstanding probable cause, a police officer may not always seize a suspect by killing the suspect.  See Garner, 471 U.S. at 9-10 (finding that "[t]he intrusiveness of a seizure by means of deadly force is unmatched.").  The use of deadly force is not an issue in this case.  Furthermore, Graham recognizes that the Fourth Amendment countenances some physical coercion in conjunction with an arrest.  Graham emphasizes that the reasonableness of physical coercion is best judged by evaluating the amount of force necessary in a particular situation.  Additionally, Graham unmistakably elucidates that "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested."

*2. Municipal Liability*

In this instance, the plaintiffs fail to state a claim against the City, because the plaintiffs fail to show that Norris violated the plaintiffs' constitutional rights. However, even if a constitutional violation occurred, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat Superior or vicarious liability will not attach under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original); Greer v. Hillsborough County Sheriff's Office, 2006 WL 2535050, *3 (M.D. Fla. 2006). Municipal liability arises only if the municipality maintains an unconstitutional policy or custom. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). Failure to train constitutes a municipal policy if "the need for more or different training [is] so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that the failure to train amounts to deliberate indifference to a constitutional right. City of Canton, 489 U.S. at 390; Belcher v. City of Foley, 30 F.3d 1390, 1397 (11th Cir. 1994) ("Only when the failure to train amounts to 'deliberate indifference' can it properly be characterized as the 'policy' or 'custom' that is necessary for section 1983 liability to attach."). No basis exists for an inadequate training claim if the plaintiff alleges only a single incident to support the claim. City of Oklahoma v. Tuttle, 471 U.S. 808, 821-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing,

unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

The plaintiffs fail to identify a policy or custom, because the plaintiffs allege that, based solely on Norris's conduct, the City is liable for the City's failure to train city employees. The plaintiffs provide no additional factual allegation, other than conclusory statements as to the City's failure to train, supporting the existence of an unconstitutional municipal policy. Accordingly, the complaint is insufficient to state a claim under Section 1983 against the City.

### Conclusion

Therefore, the defendants' motion to dismiss (Doc. 6) is **GRANTED** and the complaint (Doc. 5) is **DISMISSED**.[2] The plaintiffs may file an amended complaint no later than **March 26, 2010**. Failure to file an amended complaint will result in dismissal of this action without further notice.

ORDERED in Tampa, Florida, on March 17, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[2] Because the plaintiffs fail to respond to the City's argument as to the dismissal of count three, dismissal of count three is treated as unopposed.