UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL L. AINSWORTH and
CHERYL AINSWORTH,

    Plaintiffs,

v.                                               CASE NO.: 8:10-cv-293-T-23TGW

CITY OF TAMPA and KENNY
NORRIS,

    Defendants.
_____/

## **ORDER**

A March 17, 2010, order (Doc. 12) grants the defendants' motion to dismiss (Doc. 6) and finds that the amended complaint (Doc. 5) fails to state a claim under 28 U.S.C. § 1983 ("Section 1983"). The plaintiffs submit a second amended complaint (Doc. 13) and the defendants move (Doc. 15) to dismiss.

<u>Allegations of the Second Amended Complaint</u>

The plaintiffs, Michael L. Ainsworth ("Ainsworth") and Cheryl Ainsworth, are married and live in Hillsborough County, Florida. On May 20, 2007, around 11:00 p.m., Ainsworth drove eastward on Busch Boulevard past the defendant Kenny Norris ("Officer Norris"), who initiated a "traffic stop," pursued Ainsworth, and activated the flashing lights on Officer Norris's patrol car. Ainsworth pulled his vehicle into a parking lot on the corner of Busch Boulevard and 30th Street. Officer Norris followed Ainsworth into the parking lot, exited the patrol car, and approached Ainsworth's vehicle. After obtaining Ainsworth's license and registration, Officer Norris returned to the patrol car.

After reviewing Ainsworth's license and registration, Officer Norris approached Ainsworth's vehicle and ordered that Ainsworth exit the vehicle. Officer Norris informed Ainsworth that the Pinellas County Sheriff's Office had issued a warrant for Ainsworth's arrest. (Doc. 13, ¶ 14) Rather than exit the vehicle, Ainsworth "explained that the warrant was for the arrest of a different Michael Ainsworth" (the "fugitive Ainsworth"). Ainsworth informed Officer Norris that, as a result of another, earlier incident (in which Ainsworth was mistaken for the fugitive Ainsworth), the Pinellas County Sheriff's Office provided Ainsworth a letter memorializing that Ainsworth was not the subject of the warrant. Officer Norris ignored the explanation and demanded again that Ainsworth exit the vehicle.

In response, Ainsworth asked Officer Norris to speak to Ainsworth's wife on Ainsworth's cellular telephone so that his wife could explain to Officer Norris that the warrant applied to a different Michael Ainsworth. Officer Norris spoke briefly with Ainsworth's wife and demanded again that Ainsworth exit the vehicle. Rather than exit the vehicle, Ainsworth attempted unsuccessfully to call his attorney.

Next, Ainsworth again called his wife and requested that his wife "send someone to get their daughter," who was in the passenger seat of Ainsworth's vehicle. Once more, Officer Norris spoke to Ainsworth's wife and "told her to get someone to the scene to assist her daughter because her husband was going to jail." (Doc. 3, ¶ 20) Ainsworth stated that he would exit the vehicle but requested, "pursuant to instructions [Ainsworth] had received from the Pinellas County Sheriff's [Office]," that Officer Norris verify Ainsworth's fingerprints. Officer Norris "reached

into the vehicle, grabbed [Ainsworth], and yanked him violently from the vehicle before slamming [Ainsworth's] body to the ground . . . ."  (Doc. 13, ¶ 23)

As a result of the alleged "excessive and unreasonable force" that the plaintiffs claim "was calculated by Officer Norris to cause great bodily harm," Ainsworth sustained "serious and permanent injuries . . . including, among other things, a severely herniated disc at C5-6 causing cervical radiculopathy requiring two surgical discectomy surgeries and injuries to the left shoulder including a torn labrum and rotator cuff requiring surgical repair."  (Doc. 13, ¶ 23)

## Discussion

### 1. The Defense of Qualified Immunity

"Qualified immunity permits a government official to perform a discretionary duty 'without the fear of personal liability or harassing litigation' and protects from suit 'all but the plainly incompetent.'"  Greer v. Hillsborough County Sheriff's Office, 2006 WL 2535050, *1 (M.D. Fla. 2006) (citing Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003)).  A government official performs a "discretionary duty" if the official acts in furtherance of an official duty and the act falls within the scope of the official's authority.  Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998); see also Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 & n.6 (11th Cir. 2004) (stating that, in order to receive the protection of qualified immunity, "the official must have been engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains.").  If a defendant demonstrates that the defendant acted within the defendant's "discretionary function," the burden

shifts to the plaintiff to overcome qualified immunity.  See Rushing v. Parker, 2010 WL 918323 (11th Cir. 2010).

"Because qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in the litigation.'"  Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) and Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curium)).  "'A complaint will be dismissed as insufficient where the allegations [in the complaint] are vague and conclusory.'"  Gonzalez, 325 F.3d at 1235 (quoting Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984)).  Accordingly, the plaintiff must allege with some specificity the facts supporting a Section 1983 claim.  See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).

To defeat qualified immunity, the factual allegations of the plaintiff's complaint (preliminarily accepted as true) must state a constitutional violation "clearly established" by existing legal precedent.  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).  "For the law to be 'clearly established,' case law must have earlier developed in such a concrete and factually defined context to make it obvious to [a] reasonable government actor[] . . . that what [the government actor] is doing violates federal law."  Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

*2. The Plaintiffs Fail to Allege a Constitutional Violation*

a. Officer Norris's Mistaken Arrest of Ainsworth Was Reasonable

The Fourth Amendment prohibits an arrest without probable cause. See Rushing v. Parker, 599 F.3d 1263, 1265 (11th Cir. 2010) (per curiam); Motes v. Myers, 810 F.2d 1055, 1059 (11th Cir. 1987). However, if the police have probable cause to arrest a suspect and if the police reasonably but mistakenly arrest the wrong person, no Fourth Amendment violation occurs. Hill v. California, 401 U.S. 797, 802 (1971). "The same 'reasonable mistake' standard applies (1) in the context of a [S]ection 1983 action and (2) when the police have a valid warrant—as opposed to just probable cause—to arrest someone[] but mistakenly arrest someone else due to a misidentification." Rodriguez v. Farrell, 280 F.3d 1341, 1346 (11th Cir. 2002) (Edmondson, J.).

In Farrell, an officer stopped (shortly after midnight) the vehicle in which Joe John Rodriguez rode as a passenger. The officer arrested Rodriguez after discovering three outstanding warrants for a man named Victor Heredia ("Heredia"), who used the alias "Joe Rodriguez." Before his arrest, Rodriguez presented the officer with more than ten pieces of identification, including a Florida driver's license, a birth certificate, a military discharge paper, a social security card, a credit card, and a patient data card.[1] Rodriguez was a middle-aged, white male; five feet, eleven inches in height; with brown hair, brown eyes, and six tattoos. Heredia was also a middle-aged, white male with brown hair and tattoos, but Heredia was five

---

[1] Recently discharged from the hospital (following a motorcycle accident), Rodriguez possessed the information necessary to apply for disability benefits.

feet, six inches in height.  The police promptly released Rodriguez after fingerprinting him and discovering that he was not Heredia.  Rodriguez later sued the officer under Section 1983.  Farrell finds reasonable the mistaken arrest of Rodriguez, despite the significant difference in Rodriguez and Heredia's height. Farrell notes:

> Arresting police officers need not act as judges determining ultimate facts. Trials of guilt or innocence cannot be undertaken by police officers on the side of the road in the middle of the night before an officer can effect a lawful arrest pursuant to a valid warrant.  In this case, the arresting officer said, on the spot, he did not believe plaintiff was as tall as plaintiff claimed to be. The officer was not obligated to accept plaintiff's statements as true.  Moreover, even if the arresting officer was fully aware that plaintiff was some inches taller than the 5'6" set out in the warrant, not every discrepancy (as we have already said) in height and so forth would demand that the policeman refrain from executing the warrant.  Other strong indicators in the warrant matched plaintiff. There are limits on how much independent investigating an officer must make before executing an arrest warrant, even when the arrested person is asserting a claim of mistaken identity.

280 F.3d at 1348 nn.14 & 15 (noting also that "[e]ye color (given contact lens), scars (given cosmetic surgery), and weight are all easily variable . . . ."); see also Hill, 401 U.S. at 803 (finding that "aliases and false identifications are not uncommon.").

In this action, the plaintiffs allege that Officer Norris lacked probable cause to arrest Ainsworth, because Ainsworth had both a middle name and a physical appearance different from the fugitive Ainsworth.  The plaintiffs argue (1) that "[a]s soon as [Officer Norris] ran [Ainsworth's] driver's license and learned of the warrant, [Officer] Norris was on notice that the subject had a different middle name than the [p]laintiff" and (2) that "any reasonable officer would have been sufficiently concerned to make some additional inquiry, the very least of which would have

- 6 -

been requesting the physical description of the suspect . . . ."  The plaintiffs argue that, if Officer Norris had requested a physical description, Officer Norris "would have realized . . . that [the fugitive Ainsworth] had a different middle name, was four inches shorter . . . , 40 lbs lighter[,] and had a tattoo of the grim reaper on his right arm."  However, the defendants argue (1) that "the ultimate facts . . . fail to establish that Officer Norris knew, or should have known, about the alleged differences" and (2) that the complaint permits a "reasonable inference" that Officer Norris's mistake was reasonable because Ainsworth alleges "that this had happened before . . . ."

Contrary to the plaintiffs' assertion and based on the warrant, Officer Norris possessed probable cause to arrest Ainsworth.  Officer Norris stopped Ainsworth's car an hour before midnight and discovered an outstanding warrant for a person with Ainsworth's first and last name.  Although faced with a claim of mistaken identity, Officer Norris possessed neither an obligation to accept as true Ainsworth and his wife's unsubstantiated assertion nor a duty to evaluate—at night, in a parking lot—the differences between Ainsworth and the fugitive Ainsworth's physical characteristics (of which differences the plaintiffs fail to allege that Officer Norris had any knowledge).  Even assuming that Officer Norris knew of a difference in middle name, height, weight, and tattoos of both Ainsworth and the fugitive Ainsworth, Officer Norris could have decided (reasonably) to execute the warrant despite a discrepancy.  Physical characteristics are approximate, mutable, and mistakable, and falsified identification is accessible.  With the pressure of a roadside traffic stop, at night, in a lightly populated commercial district, and with both limited information and a non-compliant suspect, Officer Norris's action was reasonable.

### b. Officer Norris's Use of Force Was De Minimis

If, as in the present case, an excessive force claim arises from "an arrest or investigatory stop of a free citizen," the claim "invoke[s] the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394-95 (1989). Nevertheless, the right to arrest a person includes "the right to use some degree of physical coercion or threat thereof." 490 U.S. at 395-96; Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003) (Marcus, J.). "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." (emphasis in original); see Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (Marcus, J.) (finding that the pertinent inquiry is "whether a reasonable officer would believe that this level of force is necessary in the situation at hand.").

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (citations omitted). Accordingly, evaluation of an excessive force claim requires consideration of "the severity of the crime at issue,

- 8 -

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." See also Lee, 284 F.3d at 1198 (citing Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986), and stating that "in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."); Durruthy, 351 F.3d at 1094 (finding that "some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense."); Lee, 284 F.3d at 1199-1200 (finding the use of force excessive because of "the infliction of such severe and disproportionate force after the arrest had been fully effected, the arrestee completely secured, and all danger vitiated.").

"[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th Cir. 2000); Zivojinovich v. Barber, 525 F.3d 1059, 1072 (11th Cir. 2008) (finding that "[d]e minimis force will . . . support a Fourth Amendment excessive force claim [if] 'an arresting officer does not have the right to make an arrest.'"); Durruthy, 351 F.3d at 1085, 1094 (finding that even if the force applied in arresting the suspect—grabbing the suspect from behind, pushing him to the ground, and placing him in handcuffs—was unnecessary, the force was not unlawful.). For example, in Nolin, de minimis force consisted of the officer's (1) grabbing the suspect and shoving him "a few feet against a vehicle," (2) pushing the officer's knee into the suspect's back, (3) pushing the suspect's head into a van,

- 9 -

(4) searching the suspect's groin area "in an uncomfortable manner," and (5) handcuffing the suspect.  In Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997), de minimis force consisted of slamming the suspect against a wall and kicking the suspect's legs apart.  See also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (finding that subduing the suspect with a "choke hold" and pushing the suspect against a wall was de minimis force); Vinyard v. Wilson, 311 F.3d 1340, 1348 n.13 (11th Cir. 2000); compare Lee, 284 F.3d at 1199 (finding a constitutional violation based on the officer's slamming the suspect's head into the trunk of the suspect's car after the officer had arrested, handcuffed, and secured the suspect.).

Additionally, neither physical resistance nor a verbal threat is a prerequisite to an officer's applying force in the course of an arrest.  For example, in the process of clearing a busy intersection of protesters, an officer in Durruthy ordered a cameraman to "get out of the street."  As the cameraman backpedaled toward the sidewalk—in an effort to comply yet to continue filming the scene—another officer grabbed the cameraman from behind, pulled him to the ground, and pinned his arms behind his back.  During the struggle, another officer purposefully struck the cameraman in the back with the officer's knee.  Durruthy finds lawful the officers' use of force in effecting the arrest.[2]  In another example, Post finds lawful an officer's using force to arrest a restaurant manager for violating a building code.  In the course of arresting the restaurant owner, an officer instructed the manager to be

---

[2] The officer arrested the cameraman for violating a law requiring a pedestrian to use the sidewalk.  Durruthy, 351 F.3d at 1089.

- 10 -

quiet. Disobeying the order, the manager instructed an employee to lower the volume on the restaurant's radio. The officer informed the manager that the manager was under arrest, and the manager raised his hands in air. Before handcuffing the manager (and even though the manager never resisted arrest), the officer spun the manager around, pushed him against a display case, and applied a "choke hold."

In this instance, the plaintiffs allege that Officer Norris, acting "within the course and scope of his employment as a municipal police officer," (Doc. 13, ¶ 31) used excessive force in arresting Ainsworth pursuant to a warrant issued in 1992 for "failure to appear for having an open container of alcohol." The plaintiffs allege that "[a]t no time did [Ainsworth] actively resist Norris or express any threatening conduct toward Norris." Both Ainsworth and his wife told Officer Norris that the arrest warrant sought a different Michael Ainsworth. Nonetheless, Officer Norris forcibly removed Ainsworth from the vehicle, slammed Ainsworth's body to the ground, and allegedly caused Ainsworth serious injuries, including "a severely herniated disc . . . and injuries to the left shoulder . . . requiring surgical repair." (Doc. 13, ¶ 23)

Before applying force, Officer Norris requested three times that Ainsworth exit the vehicle. In response to the first request, Ainsworth remained in the vehicle and insisted that the warrant "was for the arrest of a different Michael Ainsworth." In response to the second request, Ainsworth remained in the vehicle and insisted that Officer Norris speak with Ainsworth's wife. Despite stating in response to Officer Norris's third request that he would exit the vehicle, Ainsworth remained in the

driver's seat. Belying his stated intent, Ainsworth again talked to his wife, attempted to call his attorney, and requested that Officer Norris fingerprint him.

Ainsworth's persistently resisting Officer Norris's requests to exit the vehicle escalated the threat to Officer Norris's safety and the risk of flight, or resort to some other evasion of arrest. Thus, based on Ainsworth's non-compliance, a reasonable officer might have possessed a well-founded expectation of further resistance or flight. Officer Norris possessed an arrest warrant for a suspect who both failed to appear and evaded authorities for nearly fifteen years. A reasonable officer could have deduced that Ainsworth's non-compliance was another attempt to evade law enforcement. In the circumstances, Officer Norris used an amount of force calculated to remove Ainsworth from the vehicle and quickly place him in handcuffs, each of which is an allowable component of a lawful arrest. Under the circumstances, Officer Norris's forcibly removing Ainsworth from the vehicle after Ainsworth's repeated non-compliance falls in the realm of de minimis force as described and exemplified in Nolin, Jones, and Post. Accordingly, the plaintiffs' allegations, even if accepted as true, fail to establish a constitutional violation.

### 3. Even if the Plaintiffs Allege the Violation of a Constitutional Right, the Right Is Not Clearly Established

Even if the plaintiffs allege the violation of a constitutional right, the right is not clearly established at the time of the arrest. To show that a right is "clearly established" a plaintiff must show that the "contours" of the right are:

> 'sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity

- 12 -

> unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (citations omitted).  Accordingly, "the salient question for the court is whether the law in place at the time of the incident gave the officers fair warning that their treatment of the plaintiff was unconstitutional." Thompson v. Douds, 852 So.2d 299, 305 (Fla. 2nd DCA 2003) (citing Hope, 536 U.S. at 741).

In this action, no precedent provides Officer Norris fair warning of the unlawfulness of the force Officer Norris used in securing Ainsworth.  In fact, the law at the time of Ainsworth's arrest clearly establishes that Officer Norris's using de minimis force in securing Ainsworth violates no Fourth Amendment right.  Ainsworth alleges a use of force that, even if unnecessary from Ainsworth's perspective, was neither plainly unlawful nor objectively unreasonable under the circumstances.

### *4. Municipal Liability*

In this instance, the plaintiffs fail to state a claim against the City, because the plaintiffs fail to show that Officer Norris violated the plaintiffs' constitutional rights. However, even if a constitutional violation occurred, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.  Respondeat Superior or vicarious liability will not attach under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original); Greer v. Hillsborough County Sheriff's Office, 2006 WL 2535050, *3 (M.D. Fla. 2006).  Municipal liability arises only if the municipality maintains an unconstitutional policy or custom.  Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978).

Failure to train constitutes a municipal policy if "the need for more or different training [is] so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that the failure to train amounts to deliberate indifference to a constitutional right.  City of Canton, 489 U.S. at 390; Belcher v. City of Foley, 30 F.3d 1390, 1397 (11th Cir. 1994) ("Only when the failure to train amounts to 'deliberate indifference' can it properly be characterized as the 'policy' or 'custom' that is necessary for section 1983 liability to attach.").  No basis exists for an inadequate training claim if the plaintiff alleges only a single incident to support the claim.  City of Oklahoma v. Tuttle, 471 U.S. 808, 821-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

In the second amended complaint, the plaintiffs again fail to identify a policy or custom, because the plaintiffs allege that, based solely on Officer Norris's conduct, the City is liable for the City's failure to train city employees.  The plaintiffs argue that "[t]he degree to which the City tolerated the use of force by its own officers, especially in connection with cases involving mistaken identity, is a matter to be fleshed out in discovery."  However, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  The plaintiffs cannot, consistent with the federal pleading standard, rely on facts (perhaps) revealed in discovery to state a claim under Section 1983.  "A pleading that offers "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" 129 S.Ct. at 1949 (citations omitted). Accordingly, because the plaintiffs provide no additional factual allegation—other than conclusory statements as to the City's failure to train—supporting the existence of an unconstitutional municipal policy, the second amended complaint is insufficient to state a claim under Section 1983 against the City.

## Conclusion

To say the least, the applicable precedent fails to "clearly establish" that an officer employs an "objectively unreasonable" level of force (1) if, when patrolling alone, late at night, and in an isolated area, the officer encounters a person who has eluded arrest on a lawful warrant for more than a decade and who repeatedly fails to comply with the officer's instructions to exit the person's vehicle and (2) if, after the person's serial failures to comply with instructions, the officer opens the car door, seizes the person in the driver's seat, forcibly removes the person from the car, and forcibly subdues the person on the ground. In fact, Officer Norris's employing force under these circumstances is closely comparable to a level of force the applicable precedent characterizes as de minimis. In his complaint and in his two amended complaints, Ainsworth repeatedly fails to allege any fact that establishes an "objectively unreasonable" use of force by the officer, and in his other papers Ainsworth fails to identify any "clearly established" precedent determining that the alleged force is "objectively unreasonable." Although Ainsworth alleges an unfortunate injury as a result of the officer's use of force in

Ainsworth's arrest, Ainsworth fails to allege a fact that shows the force deployed was an "objectively unreasonable," and therefore actionable, use of force.

Accordingly, because counts one and four of the second amended complaint (Doc. 13) fail to state a claim, the motion to dismiss (Doc. 15) is **GRANTED IN PART**, and counts one and four are **DISMISSED WITHOUT PREJUDICE**. The plaintiffs may submit a third (and final) amended complaint no later than **June 9, 2010**. In the absence of an additional fact showing a basis for a federal claim, each claim under Section 1983 against both Officer Norris and the City of Tampa will be dismissed with prejudice, and this action will be remanded.

ORDERED in Tampa, Florida, on June 2, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE