**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL L. AINSWORTH and
CHERYL AINSWORTH,

      **Plaintiffs,**

v.                                                    **Case No.  8:10-cv-293-T-TBM**

CITY OF TAMPA and KENNY
NORRIS,

      **Defendants.**

_____/

## O R D E R

THIS MATTER is before the Court on Defendant Kenny Norris's **Motion for**

**Summary Judgment and Memorandum of Law** (Doc. 32) and Plaintiffs, Michael L.

Ainsworth and Cheryl Ainsworth's, Response in Opposition (Doc. 41).[1]  The parties have

filed affidavits, depositions, and other record evidence in support of their respective briefs.

As set forth below, I conclude that Defendant Norris is entitled to final summary judgment in

his favor.

      Plaintiffs, Michael L. Ainsworth (Ainsworth) and Cheryl Ainsworth, his wife, are

residents of Hillsborough County, Florida.  Kenny Norris (Norris) is a sergeant with the

Tampa Police Department (TPD).  By the Third Amended Complaint, Ainsworth sues Norris

alleging false arrest and excessive force in violation of his Fourth Amendment rights (Count

---

[1]These pleadings are supplemented with booking records, affidavits, and deposition
testimony.  *See* (Docs. 33-38) and (Docs. 41-1, 41-2, 42-48).

I), along with two state law claims for false arrest (Count II) and battery (Count IV).  Cheryl Ainsworth sues for loss of consortium (Count VI).  (Doc. 19).[2]

By his motion, Norris asserts that he is entitled to qualified immunity such that the claim against him for violation of Ainsworth's Fourth Amendment rights is precluded.  As for the state law false arrest claim, he urges that the existence of probable cause is an absolute bar to such claim.  On the battery claim, he asserts that the claim is subsumed in the false arrest claim and, in any event, the touching that occurred in this instance was reasonable and incident to a normal arrest and thus does not rise to the level of an actionable and independent tort.  (Doc. 32).

In response, Ainsworth essentially urges that there are genuine issues of material fact which preclude the grant of summary judgment in Norris's favor on any of his claims.  (Doc. 41).

## A.

Many of the pertinent facts of this case are undisputed.  On the evening of May 20, 2007, at approximately 11:45 p.m., Ainsworth was driving east on Busch Boulevard, in Tampa, Florida, when he passed Norris.  Moments later, Norris, driving a City of Tampa police vehicle, activated the flashing lights and pursued Ainsworth.  When he saw the lights, Ainsworth pulled into a restaurant parking lot on the corner of Busch Boulevard and 30th Street.  Norris, in full police uniform, then approached Ainsworth's vehicle and asked for his

---

[2]Counts III, V, and VI directed against the City of Tampa were dismissed previously by the court.  (Doc. 25).

license and registration which Ainsworth provided.  Norris returned to his patrol car and using

a laptop computer, he ran Ainsworth's information through the NCIC/FCIC database to check

for outstanding warrants.  The database revealed an active warrant with the Pinellas County

Sheriff's Office (PCSO) for an individual with the same first and last name, race, and date of

birth as Ainsworth.  (Docs. 33-2 at 11; 52 at 7).  By his account, Norris confirmed the

existence of the warrant through the TPD warrant channel.[3]  After confirming the warrant,

Norris returned to Ainsworth's vehicle and demanded that he exit the vehicle.  When

Ainsworth asked why, Norris informed him of the outstanding warrant for his arrest and that

he was going to jail.  Ainsworth did not exit the vehicle, attempting instead to explain to

Norris that the warrant was for another individual.  Ainsworth informed Norris that he had

been mistakenly arrested on this warrant in the past,[4] and had subsequently received a letter

from the PCSO stating that he was not the wanted person.  Ainsworth did not, however, have

a copy of the letter in his possession.  Despite the explanation, Norris made a second request

for Ainsworth to exit the vehicle.  Ainsworth remained seated in the car although he did open

his door.

---

[3]Documentary evidence supports that a TPD dispatcher sought to confirm the warrant with the PCSO shortly before 11:43 p.m.  The warrant was confirmed by the PCSO at about 11:54 p.m. via teletype indicating the PCSO held an active warrant for failure to appear for arraignment on an open alcohol violation.  The teletype indicated that fingerprints were available upon request.  (Doc. 38-2).

[4]It also appears undisputed that in 2002 Ainsworth was arrested by the Daytona Beach Police Department on the Pinellas County warrant.  Thereafter, between 2002 and 2005, Ainsworth was stopped or detained multiple times on the warrant, but had never been detained by the TPD.

3

At this time, Ainsworth was also speaking with his wife, Cheryl, on his cellular telephone. He asked his wife to speak with Norris to explain that the warrant was not for him. According to Ainsworth, approximately five to seven minutes had passed since Norris first asked him to exit the vehicle. He handed the phone to Norris. By Cheryl Ainsworth's account, she explained to Norris that they had this letter and she also requested that he check with Pinellas County because they had a record. In response, Norris purportedly stated "that's not how we handle things" and he then ended the call. According to Ainsworth, after handing the cellular phone back to him, Norris said, "I need you to get out of the car. You're going to jail . . . you know, you're not cooperating." Without exiting the vehicle, Ainsworth picked up his phone and attempted to call his attorney.

At this point, Norris grabbed Ainsworth's left hand and bent it forward in an effort to get his compliance. Ainsworth did not exit the vehicle continuing instead to call his attorney. It is at this point in the confrontation that Ainsworth's and Norris's stories diverge.

Ainsworth claims that he informed Norris that he would exit the vehicle but that he wanted to be fingerprinted before he was sent to jail. By Ainsworth's account, Norris responded "don't f'ing tell me how to do my job" and he then reached in the car and physically pulled Ainsworth out of the car torso first, grabbing his left arm and then, once out, flipping him over his left shoulder. According to Ainsworth, he landed on his left side striking the pavement with his head and shoulder. Ainsworth claims he was completely passive and did not actively resist or express any threatening conduct toward the officer either before or after he was removed from the vehicle. When he was taken to the ground,

4

Ainsworth was knocked unconscious and when he regained consciousness he was handcuffed in the back of a patrol car.[5]

In contrast to Ainsworth's version, Norris testified that when he grabbed Ainsworth's left hand, Ainsworth pulled away. However, he shortly thereafter voluntarily exited the vehicle and was handcuffed on his left hand. He continued to talk on the phone as he was escorted to Norris's patrol car. At the cruiser, Norris held Ainsworth's left hand behind his back and placed him chest down on the car. While attempting to get the handcuff on Ainsworth's right hand, he refused to put his phone down and when Norris attempted to take the phone from Ainsworth, Ainsworth spun toward him with clenched fists and said, "I told you to keep your hands off of me." In response to Ainsworth's aggressive maneuver, Norris took him to the ground where he and an Officer Leggett completed cuffing him.

Ainsworth was arrested on both the PCSO warrant and for resisting arrest without violence in violation of Fla. Stat. § 843.02. He was subsequently cited for an open container violation when a beer was found in his vehicle after his arrest. EMS treated Ainsworth at the scene for scrapes to his face and shoulder before he was transferred to Hillsborough County jail where, according to the jail's booking information, he was booked at 1:44 a.m. Subsequent to being fingerprinted, it was confirmed that he was not the subject of the PCSO warrant.

The parties dispute what Norris knew about the warrant and when he knew it. Ainsworth maintains that merely by reason of the differences between the description in the

_____

[5]As noted, Ainsworth claims injury to his spine and shoulder and significant medical expenses all related to this event.

warrant and his own appearance, Norris was obliged not to arrest him.  In any event, he

maintains that Norris was informed that the warrant was not for him by way of the exchange

of teletypes between the TPD and PCSO and the TPD dispatcher's communications with

Norris at the scene.  In particular, after the initial confirmation of the warrant, the teletypes

reveal that at 12:08 a.m., the TPD dispatcher sent the following message:

> REF OUR HIT CONFIRMATION WE SENT
> WE ARE NOW NOT SURE IF THIS IS THE SAME SUBJECT
> SEE ATTACHED FLORIDA DL THIS IS THE SUBJECT WE ARE OUT WITH SAME
> DOB AND NAME BUT SHOWING DIFFERENT SOCIAL SECURITY NUMBER AND
> OUR SUBJECT DOES NOT HAVE A TATTOO OF A GRIM REAPER AS YOU HAVE
> INDICATED IN YOUR HIT

(Doc. 38-2 at 3).[6]

At 12:12 a.m., PCSO responded:

> IF YOU CANNOT BE POSITIVE SUBJECT IS OUR WANTED PERSON DO NOT
> ARRREST (sic) FOR THIS AGENCY AS THIS WARRANT IS FIFTEEN YEARS OLD
> AND BOND IS ONLY $33.  IF SSN AND TATOO (sic) DOES NOT MATCH, SUBJECT
> IS PROBABLY NOT OUR WANTED PERSON.  WE DO NOT HAVE ANY FURTHER
> INFO.  PLS ADVISE WHAT ACTION YOU PLAN TO TAKE.

(Doc. 38-1 at 4).  Based on this latter teletype, Plaintiff also maintains that the arrest in these

circumstances was contrary to the PCSO's directive.[7]

Norris claims he did not send, receive, see, or even hear of these teletypes that

evening.  (Doc. 33 at 11).  This is disputed by the TPD dispatcher who testified that she would

have received her information from Norris and communicated the information she was

---

[6]Driver license records indicated that Ainsworth's social security number did not match that indicated on the warrant, and by this point, Norris had apparently confirmed that Ainsworth did not have any tattoo as indicated on the warrant.

[7]Norris concedes at deposition that had Pinellas County said they did not want Ainsworth extradited and Norris was aware of this information at the time, he would not have arrested Ainsworth on the PCSO warrant.  *See* (Doc. 35 at 65-66).

receiving from the PCSO to Norris at the scene.  (Doc. 36 at 13).  As for the difference in

Social Security numbers and the lack of tattoo, Norris claims that he did not notice the

absence of a tattoo until after the arrest was made, and in any event, tattoos can be removed.

Norris did not consider the difference in Social Security numbers to be controlling since such

can be falsified or inaccurately entered.  By his account, he made his second request for

information from Pinellas County after Ainsworth was in custody based on what Ainsworth's

wife said and comments by a friend of Ainsworth who responded to the scene and advised that

Ainsworth had been wrongly arrested before.  Despite the suggestion of doubt in the teletypes,

Norris claims he was certain that he had the right person.  He further claims that if Ainsworth

had not resisted arrest, he would have detained Ainsworth and taken him to the Orient Road

Jail to have him fingerprinted.  (Doc. 33 at 8-12).

## II.

## A

The court shall grant summary judgment for the moving party only when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

no genuine issue as to any material fact and that the movant is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  The movant bears the exacting burden of

demonstrating that there is no dispute as to any material fact in the case.  *Celotex Corp. v.

Catrett,* 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918

(11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party

to establish the existence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 324;

*Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994).  The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception.  *Perkins v. Sch. Bd. of Pinellas County*, 902 F. Supp. 1503, 1505 (M.D. Fla. 1995).  It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e)(2).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations."  *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)).  The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried.  *Hairston*, 9 F.3d at 921; *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

## B

Norris claims qualified immunity from suit on the Fourth Amendment claims for false arrest and excessive force.  Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see William v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  "The

purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, . . . protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted).

The Eleventh Circuit uses an "objective legal reasonableness" test to determine whether or not qualified immunity applies to the governmental official's conduct. *Koch v. Rugg,* 221 F.3d 1283, 1295 (11th Cir. 2000). This analysis renders the subjective intent of the government official irrelevant. *Id.*; *see Anderson v. Creighton,* 483 U.S. 635, 641 (1987) (noting that the subjective beliefs of an official about the legality of his conduct are irrelevant to qualified immunity analysis). The Supreme Court has established a two-part test to determine whether qualified immunity applies: (1) the Court determines whether the plaintiff has alleged the deprivation of a constitutional right, and if a violation is found, (2) the Court must determine whether the plaintiff's right was "clearly established" at the time the alleged violation occurred. *See Hope*, 536 U.S. at 736-39; *see also Pearson v. Callahan,* 555 U.S. 223, 229 (2009) (holding that the court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). The salient question regarding whether the law was "clearly established" is whether the state of the law at the time of the incident provided a fair warning to government officials that their behavior was unlawful. *Hope*, 536 U.S. at 741; *see Saucier v. Katz,* 533 U.S. 194, 202 (2001) (stating that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it

would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

III.

A.

In the present case, the question of whether Norris was acting within the scope of his discretionary authority when he placed Ainsworth under arrest is not in dispute.  (Doc. 41 at 8).  Therefore, the pertinent inquiry is whether the facts, when viewed in a light most favorable to Ainsworth, establish that Norris violated a constitutional right.  If he did not, then the inquiry is over and Norris is entitled to qualified immunity.  *Saucier*, 533 U.S. at 201.  On the other hand, if he did violate a constitutional right, then the court must determine if the right was "clearly established" at the time of the violation.  *Hope*, 536 U.S. at 736; *Saucier*, 533 U.S. at 201.

An arrest made without probable cause is unreasonable and in violation of the Fourth Amendment.  Such a violation of the Fourth Amendment may support a claim under 42 U.S.C. § 1983.  *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010) (per curiam); *Motes v. Myers*, 810 F.2d 1055, 1059 (11th Cir. 1987).  However, case law also holds that when a police officer has "probable cause to arrest one party, and [ ] reasonably mistake[s] a second party for the first party, then the arrest of the second party is a valid arrest."  *Hill v. California,* 401 U.S. 797, 802 (1971) (citations omitted).  "This 'reasonable mistake' standard applies (1) in the context of a section 1983 action and (2) when the police have a valid warrant– as opposed to just probable cause– to arrest someone, but mistakenly arrest someone else due to a misidentification."  *Rodriguez v. Farrell,* 280 F.3d 1341, 1346 (11th Cir. 2002).  As in all

10

such cases, the court "must evaluate the totality of the circumstances surrounding the arrest to

determine its reasonableness." *Id.* at 1347.  "A policeman's mistaken belief of fact can

properly contribute to a probable cause determination and can count just as much as a correct

belief as long as the mistaken belief was reasonable in the light of all the circumstances." *Id.*

(quoting *United States v. Gonzalez,* 969 F. 2d 999, 1006 (11th Cir. 1992)).

The *Farrell* decision is instructive.  There, one Joe Rodriguez was riding as a

passenger in a vehicle when the vehicle was stopped for a broken tag light.  The driver of the

vehicle was arrested shortly thereafter for drugs found in her purse.  Rodriguez was ordered

out of the vehicle by Sgt. Farrell and asked to produce identification.[8]  Using this information,

Farrell ran a warrants check through his dispatcher and obtained a name hit.  Teletype

communications to the dispatcher indicated three outstanding warrants for a man named

Victor Heredia (Heredia), who used the alias "Joe Rodriguez."  According to the warrant,

Rodriguez and Heredia had many of the same physical characteristics, including their age, hair

color, and tattoos.  However, Rodriguez was five inches taller than Heredia.  Nevertheless,

Rodriguez was arrested on the Heredia warrant and taken into custody.  Thereafter, after a

comparison of fingerprints, Rodriguez was released.  Rodriguez subsequently filed suit

pursuant to 42 U.S.C. § 1983 claiming his Fourth Amendment rights were violated by the

unlawful arrest.  *Farrell*, 280 F.3d at 1343-45.

---

[8]Before he was placed under arrest, Rodriguez provided the officer with more than ten
pieces of identification, including a Florida driver's license, a birth certificate, military
discharge papers, a social security card, credit card, and V.A. patient card.

On Officer Farrell's claim of qualified immunity, the Eleventh Circuit phrased the issue as whether the arrest pursuant to a valid warrant was outside the scope of a constitutionally permissible "reasonable mistake." *Id.* at 1345-46.  In concluding that it was not and that any mistake by the arresting officer was reasonable, the court noted that Rodriguez's identifying information was identical to the information listed under the warrant in "four critical" aspects: the same name, sex, age, and race.  Also similar were their Social Security numbers and the fact that they had addresses in neighboring towns and were born in the same state.  The only "material" difference was that Rodriguez claimed to Farrell that he was 5' 11" tall, five inches taller than the height listed on the warrant.[9]  *Id.* at 1347.  The court concluded that in the circumstances of that case, given the similarities, any mistake in the officer's estimate of Rodriguez's height was reasonable and did not equal a constitutional violation.[10]  *Id.* at 1348.

In the present case, Ainsworth contends that Norris's decision to arrest him was not a "reasonable mistake" because Norris had actual knowledge that Ainsworth was not the subject of the warrant prior to arresting him[11] or that, in light of all the circumstances presented him and given the officer's own doubt, he was obliged to investigate further before making the

---

[9]The court discounted eye color, scars, and weight– all of which can vary, especially over time.  *Id.* at 1347 n.14

[10]The court also determined that the officer had not violated clearly established law at that time.  *Id*. at 1350-51.

[11]This claim of actual knowledge appears predicated on Ainsworth's belief that the information contained in the NCIC/FCIC check, specifically the information regarding the differences in Social Security numbers and the lack of a tattoo, gave actual knowledge that he was not the individual sought under the warrant and precluded a valid arrest under this warrant.

12

arrest.  Here, as in *Farrell*, the question is whether under the totality of the circumstances, Norris's mistaken arrest of Ainsworth– based on a valid warrant– was outside the scope of a "reasonable mistake."  While I find the conclusion a close call, I conclude that the mistake was not constitutionally unreasonable.

First, as in *Farrell*, the identifying information provided by Ainsworth was the same as that listed in the warrant in four "critical aspects:" he had the same first and last name, the same date of birth, he was the same race, and the same sex as the individual wanted under the warrant.  Though some of the identifying information, such as the social security numbers and tattoo did not match, these differences were not controlling.  Indeed, it appears undisputed that Norris did not discover the absence of a tattoo until after the arrest and according to the officer, social security numbers can be inputted improperly so he placed little import on that difference.  Although Norris's claim that he was unaware of the contents of the teletypes between his agency and the PCSO is disputed by his own dispatcher, and frankly not wholly believable, even in a light most favorable to Ainsworth, there was no definitive information given the officer to indicate that Ainsworth was not the subject of the warrant.  More importantly, despite any doubts created by the information given to him, Norris could still reasonably conclude that he had the right person such that the arrest should occur.  In this regard, the information exchanged between the TPD and the PCSO was inconclusive.  Norris was not obliged to credit the information provided from Cheryl Ainsworth and Ainsworth's friend that he was not the person wanted under this warrant.  This is especially so where the follow-up inquiry to the PCSO did not reveal that the warrant was flagged in any way and the PCSO in no way confirmed what the wife and friend were saying.  Even if, as it appears, the

13

PCSO had issued a letter for Ainsworth's benefit and use in such instances, the letter was not available to Norris on that evening nor was the warrant flagged in any way with such information in order to prevent a wrongful arrest. Ainsworth's argument that Norris did not make a "reasonable mistake" because the PCSO told him not to arrest Ainsworth for their agency if he could not be positive that Ainsworth was the subject of the warrant also fails. Although Norris testified that he would not arrest someone on an outstanding warrant if the issuing agency did not want the individual extradited, he further testified that there was some discretion based on the circumstances. Generally, he would rely on the information provided by the issuing agency. Here, the PCSO did not provide additional information. And Norris believed he had the Michael Ainsworth who was the subject of the PCSO warrant. However, even if Norris was obliged to give deference to the issuing agency's directive, the applicable standard is one of probable cause and objective reasonableness. While another officer might have chosen a different course, the question on qualified immunity is whether a reasonable official in Norris's position could have believed the arrest was appropriate. By my consideration, Norris may properly claim that though he was mistaken, he acted reasonably under this standard.

The argument that Norris should have done more before making this arrest is unavailing as well. Again, *Farrell* is instructive:

> Arresting police officers need not act as judges determining ultimate facts. Trials of guilt or innocence cannot be undertaken by police officers on the side of the road in the middle of the night before an officer can effect a lawful arrest pursuant to a valid warrant. . . . There are limits on how much independent investigating an officer must make before executing an arrest warrant, even when the arrested person is asserting a claim of mistaken identity . . . Furthermore, the circumstances that justify a lawful arrest also justify

14

a brief detention incident to the arrest.  The question is not whether the police
could have done more; but whether they did just enough.

*Farrell,* 280 F.3d at 1347 n.15.

As was stated earlier in these proceedings, a request for additional identifiers and
physical information would have made little difference: "[e]ven assuming that Officer Norris
knew of a difference in middle name, height, weight, and tattoos of both Ainsworth and the
fugitive Ainsworth, Norris could have decided (reasonably) to execute the warrant despite a
discrepancy.  Physical characteristics are approximate, mutable, and mistakable, and falsified
identification is accessible."  (Doc. 18 at 7) (Merryday, J.).  Here, while Norris perhaps could
have alternatively sought to merely temporarily detain Ainsworth in order to obtain his
fingerprints and have a comparison done before formally arresting him, such would have
made little practical difference as the fingerprinting would have occurred either at the jail,
where it ultimately did take place, or at the police station.  In any event, such was not required
by the Fourth Amendment as a predicate to a valid arrest and as this matter developed,
Ainsworth's resistance resulted in his arrest on another charge not challenged on this motion.[12]

Here, the undisputed evidence indicates that Norris made more than one unsuccessful
attempt to obtain information that would conclusively resolve the matter.  While the

---

[12]Florida law permits an arrest on misdemeanor charges such as this resisting and
opposing charge committed in the presence of an officer.  It is also worth noting that Norris's
request that Ainsworth exit his vehicle was entirely consistent with Fourth Amendment
considerations and should have been complied with.  *See Pennsylvania v. Mimms*, 434 U.S.
106 (1977).  There can be no dispute that Ainsworth's refusal to exit the vehicle after several
requests led to the further confrontation and to the additional charge for resisting arrest
without violence.  At that point, even if a reasonable officer in Norris's shoes would have let
Ainsworth go on the underlying warrant, Ainsworth was still in custody and going to jail on
the new misdemeanor offense.

15

surrounding circumstances were not as compelling as those in *Farrell*, Norris was placed in

circumstances where he needed to act with reasonable dispatch.  His efforts to obtain

definitive information on the person sought under the warrant were neither unreasonable nor

inadequate in light of all the circumstances.

      For these reasons, I find as a matter of law that Norris's mistaken arrest was not

constitutionally unreasonable and that such conclusion may be reached on this motion without

the necessity of a trial.  There being no constitutional violation on this basis, Norris has

qualified immunity from suit on Ainsworth's claim for false arrest under the Fourth

Amendment.

B.

      Ainsworth also alleges that Norris used excessive and unreasonable force during the

arrest.  The allegation is predicated on Ainsworth's belief that Norris was not justified in

using force to arrest him because he was not violating any laws, attempting to interfere with

Norris's execution of his duties, or displaying assaultive behavior toward Norris.  (Doc. 19 at

4).  As set forth above, while the parties' versions differ about how Ainsworth exited the

vehicle and what then occurred, there is no dispute that Norris forcibly took hold of

Ainsworth, attempted to handcuff him, and forcibly took him to the ground to complete the

handcuffing.  By Ainsworth's account, he was thrown to the ground and landed on his head

and shoulder with such force that he was rendered unconscious.  He urges that in light of the

minor nature of the underlying offense, the fact that his minor daughter was with him in the

car and he posed no flight threat, and his wholly passive, nonthreatening response to Norris,

*any* force used by Norris in effecting the arrest was excessive in violation of the Fourth

16

Amendment.  Further, Norris's characterization of the force used as *de minimus* is inaccurate as Ainsworth here sustained a herniated cervical disc with cervical radiculopathy requiring two surgical procedures, a torn labrum and rotator cuff injury which too required surgical repair, all as a result of Norris's calculated and unjustified decision to violently slam him to the ground.

By his motion, Norris urges that Ainsworth's claim for excessive force is subsumed in the illegal arrest claim and should be dismissed on a finding that the arrest was legal, and in any event, Norris's use of force was objectively reasonable such that he is entitled to qualified immunity.  The inquiry is whether a reasonable officer would believe that the level of force employed was necessary to the situation at hand.  Here, in light of the circumstances, there was a need for some force, the force employed by Norris was consistent with the circumstances he was confronting, and the injuries sustained are not as claimed by Plaintiff.

The Fourth Amendment's prohibition against unreasonable searches and seizures includes the right to be free from the use of excessive force during the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394-395 (1989).  Nevertheless, "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. In this circuit, "some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003).  "The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir. 2002).  "Though the facts must be taken in the light most favorable

to [the non-moving party], the determination of reasonableness must be made from the perspective of the officer." *Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies:  'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments– in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97 (internal citations omitted).

In order to determine whether the officer's use of force was reasonable, the Court should consider the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury. *Vinyard*, 311 F.3d at 1347.  Pertinent factors in the court's determination of whether force was needed under the circumstances include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Lee v. Ferraro*, 284 F.3d at 1198 ("[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.").  "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*,

18

441 U.S. 520, 559 (1979).  A "proper application [of the test of reasonableness] requires careful attention to the facts and circumstances of each particular case[.]"  *Graham,* 490 U.S. at 396.

Initially, insofar as Ainsworth contends that Norris was not justified in using *any* force to effect his *illegal* arrest because he was not violating any laws, attempting to interfere with Norris's execution of his duties, or displaying assaultive behavior toward Norris, I find as a matter of law that the claim is subsumed in the bad-arrest claim addressed above.  *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995)).  And given my conclusion that Norris prevails on the alleged illegal arrest claim, any such excessive force claim subsumed therein would similarly fail. However, a claim for excessive force during a *legal* stop or arrest would be a discrete claim. *Jackson*, 206 F.3d at 1171.  Thus, having determined that Ainsworth's arrest was legal, a claim against Norris for the use of excessive force in making the arrest is properly considered as a discrete claim.

In this matter, it is clearly the case that certain of the relevant factors favor Ainsworth.  Thus, the stop was ostensibly initiated because Ainsworth was driving too fast. The stop itself occurred without significant incident.  Identification was promptly produced and even though an outstanding warrant was discovered, the underlying charge, failure to appear on an open container violation, can only be described as minor.  Even by Norris's version, Ainsworth's resistance to his commands was generally passive.  Further, Ainsworth evidenced no threat to the safety of Norris or others and given the presence of his young

daughter, he was not a threat to flee.  At best, these circumstances would permit only a *de minimus* level of force by an arresting officer.

Yet, even by Ainsworth's version, he was not fully compliant with Norris's commands.  Thus, it is undisputed that he ignored Norris's first two requests that he exit the vehicle.  As noted above, such requests by the police are entirely consistent with Fourth Amendment considerations and Ainsworth ignored the requests at his peril.  Even when Norris employed a compliance move on Ainsworth's hand to coax him out of the car, Ainsworth refused to exit the car and instead tried to make another phone call.  By Ainsworth's account, his resistance was intentional and lasted for more than a few minutes. In these circumstances, viewed from Norris's perspective, some additional force by him was necessary and entirely reasonable.

Ainsworth claims that on Norris's third request, he agreed to get out of the car but demanded that he be fingerprinted before going to jail.  Instead of allowing him to exit voluntarily, Norris chose to physically remove him from the vehicle by reaching into the car and behind Ainsworth's back and pulling him out of the driver's seat.  Once out, Ainsworth was forcibly taken to the ground with enough force to render him unconscious and, by his version, cause severe neck and shoulder injury.  Although there is a dispute between this version and that of Norris, the crux of the excessive force claim is that Ainsworth was forcibly taken to the ground hitting his head and shoulder.  After careful review of the case law, I am obliged to conclude that under either version and even if Ainsworth's version is fully credited, his claim for excessive force fails as a matter of law.  Here, in light of Ainsworth's resistance to Norris's verbal requests and commands, the additional force employed by Norris to remove

Ainsworth from the car and take him to the ground to handcuff him appears no more than necessary in the circumstances. That he landed on his head and shoulder is very unfortunate but is not demonstrated to be intentional, and his alleged injuries alone do not demonstrate the unreasonableness of Norris's force. By my consideration, the force employed appears quite similar to that found reasonable in a number of cases in this Circuit. *See Nolin v. Isbell,* 207 F.3d 1253, 1257-58 (11th Cir. 2000); *Durruthy*, 351 F.3d at 1085, 1094; *Jones v. City of Dothan*, 121 F.3d 1456, 1460-61 (11th Cir. 1997); *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993); *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008) (citing *Farrell*, 280 F.3d at 1345)).

As stated in *Jones*, "an officer is entitled to qualified immunity from an excessive force claim 'unless application of the [excessive force] standard would inevitably lead every reasonable [official] in [the officer's] position to conclude the force was unlawful.'" *Jones,* 121 F.3d at 1460 (quoting *Post*, 7 F.3d at 1559). This standard being an objective one, I am obliged to conclude as a matter of law that a reasonable officer in Norris's position would not inevitably conclude that the force employed here was unlawful. Thus, Norris is entitled to qualified immunity on this claim as well.

C.

In Count II, Plaintiff asserts a state law claim for false arrest. In Florida, "[f]alse imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." *Johnson v. Weiner*, 19

So. 2d 699, 700 (Fla. 1944).[13]  The elements of the cause of action include: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. Dist. Ct. App. 2006) (citing *Johnson*, 19 So. 2d at 700).  The existence of probable cause is an absolute bar to a claim for false arrest. *Mills v. Town of Davie*, 48 F. Supp. 2d 1378, 1380 (S.D. Fla. 1999) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)).  Having determined that Norris had probable cause to arrest Ainsworth, he is likewise entitled to summary judgment on Ainsworth's false arrest claim.

D

As for his claim of battery in Count IV, Florida law prescribes that a "battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996).  And, "a presumption of good faith attaches to an officer's use of force in making an arrest and an officer is liable for damages only where the force used is clearly excessive." *Id.*  Thus, acts which are "no more than ordinary incidents of the arrest . . . do not give rise to an independent tort." *Lester v. City of Tavares*, 603 So. 2d 18, 19-20 (Fla. Dist. Ct. App. 1992).  Having determined as a matter of law that Norris acted lawfully in the arrest

---

[13]"[F]alse arrest is one way to commit false imprisonment; since an arrest involves a restraint, it always involves imprisonment." *Andrews v. Florida Parole Com'n*, 768 So. 2d 1257 (Fla. Dist. Ct. App. 2000) (quoting 32 Am. Jur. 2d *False Imprisonment* § 3 (1995)).

of Ainsworth and that the force used to effect the arrest was not excessive, Ainsworth's state

law claim for battery likewise fails.

IV.

For the foregoing reasons, Defendant Kenny Norris's Motion for Summary Judgment

(Doc. 32) is **granted**.  While not addressed in the motion, it follows that the derivative claim

brought by Cheryl Ainsworth is likewise dismissed.  The Clerk of Court shall enter judgment

in Norris's favor.  Upon consideration of all the circumstances, the judgment shall reflect that

each party shall bear his/her own fees and costs.  The Clerk shall then close this file.

**Done and Ordered** in Tampa, Florida, this 10th day May 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record